Good morning. May it please the court. I'm Elizabeth O'Brien. I represent appellant Travis Morgan, who is the successor and interest to appellant. May I ask you about the appellant? Adrian Scott Morgan has passed away. Is that correct? Um, and so you're representing the son who is the successor in interest? Yes, Your Honor. What are the claims that survive his death? Well, his 1983 claim still survives his death, and there's a potential new claim for a wrongful death. Is there? Um, but that's well, that's one thing I wanted to ask. Are you representing to us that the death may have been attributable to the problems that are involved in this case? Absolutely. So what do you want us to do? Well, I want us to go back to the district court, um, and vet the case that should be heard and all the evidence. And, um, obviously, we would be requesting to add a new claim as well. We can't do that at this point. I mean, we could have we could bring a new case for the wrongful death because that is a new claim, given that he just passed. Um, but they should be heard together. Um, and we would make that request. What are the damages in the 1983 claim? What are the damages that would be recoverable, uh, by the successor? The violation of his father's civil rights, any support that he may gain from his father over the years? Um, all of those damages and and mostly support, um, and financial, um, support that that the son would would gain from his father and loss of of of that relationship. Now, yeah, it does change the landscape of the case. There's no question about that. Um, obviously, it's it's a fairly new new issue that we're dealing with, given his recent demise. Um, but we're here today to talk about what the district court decided, um, in ruling against our client, um, and and dismissing it with prejudice. What you're the issue of the exhaustion of remedies would have to be decided by us favorably before we could send this back. I take it whatever claims are being brought. Absolutely. Well, there doesn't appear to be disagreement. I mean, I don't hear, uh, defendant disagree with the proposition that the dismissal should have been without prejudice. And I'm wondering, does administrative exhaustion enter into the wrongful death claim at all? It wouldn't know. And so that that claims there, no matter what, whether it's this action or a separately filed action. That is true. I just confess, started thinking about this last night. What what role does administrative exhaustion play anymore? If the person that didn't exhaust is no longer with us, it wouldn't play any role. And it wouldn't play any role in the sense that, um, in the new claim. And it wouldn't play any role in the sense that, uh, he's he was no longer incarcerated. Even prior to his death, he had been released from custody. But the issue that the district court dealt with was the fact that when the case was originally filed, he was incarcerated. And the district court determined that he had failed to exhaust his administrative remedies, despite the fact that there was ample evidence in front of the court that he attempted on many, many occasions to file grievances to, um, to get the medical care he needed. And he was thwarted and not permitted by custody deputies to file these complaints. Well, I, I'm, I, let me, let me go back to the exhaustion. I'm a little confused. The wrongful death claim would be what? A claim under state law? Yes. The exhaustion would be necessary for, um, I assume for, uh, the, uh, 1983 Eighth Amendment claim. Right. The, the, I mean, there is still an, you know, a tort claim needs to be filed for the wrongful death. That, that, that's, we're still well within that, that timeframe. I mean, there are, there are, um, administrative hurdles that we still need to jump through, but we have time to do that. Um, that's not what the district court obviously had any, um, determination of because he was, he was alive and well. But, but any Federal, what I'm trying, is, is it, is it, is it correct that any would depend, assertion of any Federal claim would depend upon the exhaustion issue? Yes. Okay. And. Is that true even though plaintiff, I'll call him that, was, I'm trying to figure out what happens when, it's, it's the Prison Litigation Act that installs the barrier. When he's no longer in. When he's no longer in custody and now he's passed away, is it still, is that barrier still there? That barrier isn't there now if the case was filed now. So, and the barrier wouldn't have been there if the case was filed after he was released from custody. But because he was released from, or excuse me, because the case was filed when he was still in custody, the PLRA requirements. Still require. Still. Is there precedent that speaks to that? I didn't think about that until just now. Um, it's not that there's precedent necessarily to speak to that, but the, the language, the clear language of the PLRA states that any prisoner confined at that time who brings suit must do X, Y, and Z, must exhaust their remedies. What I'm struggling with is if the dismissal would be without prejudice so that you could go back and do it all again and the plaintiff is no longer in custody, does the fact of release, disregard death row, does the fact of release kind of boot out the gatekeeping function? It does. It does. But it wasn't dismissed with, without prejudice. Well, okay. So if, if, and there doesn't appear to be dispute about that. So if we say dismissal should have been without prejudice, is there anything further that we have to consider? Not really. That we have to consider. If the dismissal was with, without prejudice and he was out of custody when we refiled, then, then no. There's, there's not an issue. Say, say that again. Then there's, there's not an issue. If he's out of custody when who filed? When, when a refiling. Refiling. Okay. So presumably he has passed away, but his son would be a successor to the 1983 claims. So those could be refiled as well. They could. Okay. And with that, I'd like to reserve unless you have any other questions. Well, yeah. Go from the other side. May it please the court, Alison Turner for the County of Los Angeles. We may have caught you by surprise. I'd like to go back. First of all, we, we, we, I'm not aware that the County ever took the position that the court made an error in dismissing with prejudice. This second action in which Mr. Morgan had been given another opportunity to come forward with evidence to show that he should be excused from exhausting because he was being thwarted by guards. Isn't any dismissal based on the gatekeeping function, a dismissal without prejudice? It should be a dismissal without prejudice. It shouldn't have been converted to a summary judgment, for example. Right. Either. Right. But it should be treated as a 12B motion because in this circuit, that's the way these motions are treated, even if they're brought as summary judgment motions, they're treated as 12B motions. Presumably, we, we brought the motion as a 12B motion. The judge converted it. Certainly, it should be still treated as a 12B motion. Now, does that mean, at the end of the day, he had to reverse with prejudice, without prejudice? He did in the first action, Judge Wright did the first action, he dismissed without prejudice, and they refiled. The, the without, Well, what was the difference? Well, the without prejudice notion is, this is a precondition to a lawsuit. Right. So what's the difference between the two filings? I'm, I'm not understanding. Well, I would think that by the second filing, you can dismiss with prejudice if it's absolutely clear that there's nothing Mr. Morgan could show to prove that he had exhausted or that he was flawed. But, but exhaustion is a gatekeeping. It's not, not a statement as to the merits of the action. It isn't as to the merits of the action, but it's absolutely mandatory gatekeeping. And he hasn't, he hadn't shown with evidence that convinced the judge that he had exhausted or made a good faith effort to exhaust it and was. Well, when was the, there was evidence that he filed a complaint? There, there was evidence that the ACLU on his behalf filed a complaint. Yeah. The, Mr. Morgan's reply stated that we never showed that we had resolved that complaint. I'd like to point the court to the complaint itself. Mr. Morgan showed that within a week of the ACLU complaint, he was at the hospital being seen for his medical problems. And that's on the excerpt of record page 53, I believe, paragraph 42. So that's an admission that, that he got the medical attention. Is there any paper in the, in the record that demonstrates a response was given to his complaint? There is not. The problem I have is that the county's case is based upon the affidavit of, I've now forgotten his name, but the captain who says, this is our system, our system works. And the one complaint that we know was actually filed, because it's reported in the system, isn't recorded in the system as having been resolved or a response being given to him. Now, he may well have received the medical treatment. And the fact that he, by his story, continued to try to file complaints suggests that maybe he understood that complaint to be resolved. But it surely undermines the integrity of the system. So we have a statement that says, our system works, and there's not a paper that didn't get filed. Only the one paper we know got filed, the responsive paper didn't get filed. I mean, I, I, I have a real problem saying, based on that record, plaintiff didn't fail to exhaust, or plaintiff failed to exhaust, because he did file one complaint, the ACLU complaint, and there's no record of a response to that. Except his admission that he was seen at the hospital, but there is no paper But then if we take his word for it, then he also tells us he turned in lots of papers. And the judge rejects that because the captain says, the system works, there's no paper, so he must not have filed a complaint. Only the paper we know that should be there responding to the first complaint isn't there. So the system isn't perfect. That's definitely a problem. Well. But the, the, the complaints of Mr. Morgan stopped immediately, according to, to any According to whom? To him and his No. He tells us he tried several times to turn in additional complaints. Over the course of 20 months, not one complaint got, the reason that And that's why I'm focusing attention on the dog that didn't bark. The one record that should have been there is a response to the complaint the county acknowledges he files because it's in the system. And there's nothing in the system that shows that complaint was responded to. So if you look at the bare record, he exhausted. He filed a complaint. There was no response. Correct. I see where the Court's going there, but then we do have his admission that he was treated. So then if he was inadequate So if we take his word for it, why not all the other complaints be recognized Well, then we come to the standard of review, actually. And that would be clear and convincing evidence whether, whether it's clear, clearly erroneous, excuse me, was the judge's finding that his assertions that he repeatedly over the 20 months filed complaints and grievances, the judge found that implausible, that the AC, that Mr. Morgan conceded that the ACLU was regularly on site, the judge's This was on a motion to dismiss or summary judgment? This was a 12B motion, unenumerated, 12B, in which the district court is allowed to make We don't make factual Yes, the district court may make factual findings on a 12B motion, not on a 12B-6, but on an unenumerated 12B motion with respect to exhaustion, the judge can make It's based on what, on a declaration? Yes, declarations. They can make credibility determinations, they can weigh the evidence, and the clearly erroneous standard applies, which means that the judge's determination that Mr. Morgan's testimony was not credible is plausible. We laid it out in the brief because of his inconsistency How about the conclusion that the county's record system was reliable? Is that conclusion plausible in the absence of any response to the first complaint that is on record? I don't recall the judge making that finding, but Isn't that a missing piece that's kind of important? Because there's nothing else that contradicts the plaintiff's claim that he tried to file other complaints, except that they don't show in the record. It seems that the county's whole position is based on it's not in the record, and it would be, except that the one thing that should be in the record we know isn't there. So I hear your statement about this being a factual finding, and we may have a clearly erroneous standard, but I've got to say, I don't have a lot of trouble saying a finding that disregards the fact that there's no response to the complaint on file, that has to be accounted for somehow, and so maybe it is clearly erroneous. Why shouldn't I conclude that's clearly erroneous? Because of his admission in his complaint, because it's in the light of the entire record. Is it implausible in light of the entire record for him to find it not credible? Well, when he said... I mean, frankly, given the medical condition that's described, and I can't pass at all on that, it strikes me as implausible that he would sit quietly after that treatment a week later and not do anything else about a condition that sounds pretty serious. I mean, this isn't a paper cut we're talking about. I agree. So, I don't fault you. You're playing the hand you're dealt, but maybe it is the clearly erroneous standard, but maybe this is clearly erroneous. We disagree, Your Honor, of course, but we feel that the record, the burden did shift to him after what we presented, and that his job was to show that he should be deemed to have exhausted because he was thwarted at every step. And the fact that the district court didn't believe it plausible that over the course of 20 months he couldn't get one single complaint through doesn't make sense. And he had said in his first action that he did file complaints, but then they were ignored. Then the same complaints that he said he filed, he said he didn't file in the second action. So you had these inconsistent stories, the same pieces of handwritten notes. First they were copies of complaints that he had filed. Second action, they're copies of complaints that deputies trashed. So you have this conflict in his own stories. And the judge finally decided that it was not to be believed and dismissed with prejudice since he'd had the opportunity. This was his second round. He had submitted a First Amendment complaint. It had no new evidence in it. It was just the allegations that he turned into his declaration, which the judge found implausible. And on that basis... So you're defending now the dismissal with prejudice? By this time, yes. I think you can... Usually you do it with prejudice, but if it's not a correctable problem, usually you dismiss with prejudice, the prisoner goes back, exhausts his administrative remedies. If they don't satisfy him, then he comes back to court. In this case, he'd had every opportunity. He doesn't have any evidence waiting in the wings like he'd had in Wyatt, for example. So there was nothing more to be accomplished by not dismissing it with prejudice at this stage. But is there any authority that dismissal based on failure to exhaust under the Prison Litigation Reform Act supports dismissal of the action with prejudice? I haven't seen it in the Ninth Circuit, no. I think that's... We understand that the district court was saying, look, there's no point in going back to this well. It's not going to change. I don't quarrel with that, but it seems to me we have a general understanding that dismissals for the gatekeeping function are by definition dismissals without prejudice. And I'm not aware of a case that says otherwise. Thank you. Thank you. Thank you. Rebuttal. Briefly, Your Honor, with regard to the dismissal with or without prejudice, it should be remanded back to the district court that the factual finding was clearly erroneous. If they dismiss without prejudice, we still could run into some statute of limitations issues. With regard to the clearly erroneous standard, the copies of the complaints that my client attached to the various lawsuits that were filed when he was in pro per and when he was In fact, if you look at the very sparse record from appellees regarding the printout that should have had the response, what happened, that wasn't there, as the court has pointed out, the dates all line up. You know, on September 7th, I believe, is when that ACLU complaint is logged into this system. Then, a few days later, on September 11th, that's when Mr. Morgan copies his handwritten complaint and says, this is my second request. And on September 20th, he says, this is my third request. Now, when he created these documents, as it's been alleged, he's done well after the fact, he didn't have the opportunity to have that fast printout in front of him to look at those dates and make sure everything lined up. And the second one is really second to the first one. It's all consistent with him trying and attempting to get treatment, to get help, to follow their procedures. He sat in the L.A. County Jail for two years with a broken leg that ultimately landed him in a wheelchair for life. It is implausible to think that he would sit there in that amount of pain with a broken screw in his leg and a broken leg and say nothing. But he's in there, he's in solitary because he's acting in pro per and he's in there for a battery on a peace officer. They treated him poorly, they thwarted his ability to follow their grievance procedure, a procedure they know that they can treat their inmates any way they wish, do whatever they want with their grievances, and when a lawsuit comes, they print out a piece of paper and poof, that lawsuit goes away because he didn't file his administrative claims and it simply did not occur in this case. This case should be remanded back with a finding that the factual finding was clearly erroneous. But let me understand, there was an inconsistency in that he originally said that he filed complaints and then he said he wasn't able to file them because they threw him out. Is that an inconsistency or not? It could be construed as an inconsistency. I think inconsistencies in people's testimony and stories, as you're well aware, occur over time. But he's also merely writing what he thinks occurred. He handed them to the deputies, in his mind that's filing it. The fact that it was thrown away is something that subsequently occurred. And the fact that he was able to have carbon paper for those two and able to copy them and write the dates where they're supposed to be and write his inmate number where it's supposed to be on that form is indicative that these were complaints that he attempted to file. And I take it what is consistent is that he never got a written response. Never got a written response and never got treatment. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. The next case on the calendar is United Transportation Union v. LaHood, or whoever the Secretary of Transportation is now. Who is the Secretary?
judges: Schroeder, Noonan, Clifton